**UNITED STATES DISTRICT COURT**
<u>**NORTHERN DISTRICT OF NEW YORK**</u>

EUGENE F. KIMBROUGH,

                                        Plaintiff,

          - v -                                             Civ. No. 9:08-CV-03
                                                                     (GLS/RFT)

TOWN OF DEWITT POLICE DEPARTMENT, *et al.*,

                                        Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

EUGENE F. KIMBROUGH
Plaintiff, *Pro se*
06-B-487
Attica Correctional Facility
Box 149
Attica, NY 14011

OFFICE OF FRANK W. MILLER                  FRANK W. MILLER, ESQ.
Attorney for Defendants Town of Dewitt Police
Department, John Doe, Eugene Conway, Brian Lutz,
Edward W. Mason, Jr., Wayne Grecco, Keith B. Bury,
6575 Kirkville Road
East Syracuse, NY 13057

ONONDAGA COUNTY DEPARTMENT OF LAW          KATHLEEN M. DOUGHERTY,
Attorney for Defendant/Cross-Claimant Craig R. Belcher     ESQ.
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

          *Pro se* Plaintiff Eugene F. Kimbrough filed a civil rights complaint, pursuant to 42 U.S.C.

§ 1983, alleging violations of his civil rights stemming from an altercation between him and

members of the Town of Dewitt Police Department on January 11, 2005.  Dkt. No. 1, Compl.  The

Town of Dewitt Defendants[1] (hereinafter "the Defendants") now move for summary judgment and/or for dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 56(c) and 12(b)(6).  Dkt. No. 30.  Plaintiff opposes the Motion.  Dkt. No. 32.  For the reasons that follow, it is recommended that the Defendants' Motion be **granted in part** and **denied in part**.

## I. FACTS

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, and Plaintiff's Affidavit and Response thereto.  *See* Dkt. Nos. 30-10, Defs.' 7.1 Statement & 32-1, Pl.'s Resp. to Defs.' 7.1 Statement.  Where Plaintiff has not objected to a particular statement of fact proffered in the Defendants' 7.1 Statement, or vice versa, we will not cite to both 7.1 Statements.  *See* N.D.N.Y.L.R. 7.1(a)(3) ("<u>The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>") (emphasis in original).

On January 11, 2005, Plaintiff knowingly entered and remained unlawfully in a building owned by the Salvation Army, located at 200 Twin Oaks Drive in the Town of Dewitt, New York, with the intent to commit a crime therein, thus committing the crime of Burglary in the Third Degree under the N.Y. PENAL LAW § 140.20.  Defs.' 7.1 Statement at ¶ 1.  During the commission of that crime, Plaintiff triggered a silent alarm inside the building, prompting a police response.  *Id.* at ¶ 2.  At some point prior to Plaintiff's exit of the building, several police officers arrived at the Salvation Army and were located at various positions outside of the building.  *Id.* at ¶ 3.  Upon exiting the building, Plaintiff knowingly took possession of a stolen vehicle that was in the parking lot.  *Id.* at

---

[1] The Town of Dewitt Defendants include: The Town of Dewitt Police Department, Eugene Conway, Brian Lutz, Edward W. Mason, Jr., Wayne Grecco, and Keith B. Bury.  The only Defendant who has not moved for summary judgment is Craig R. Belcher, Onondaga County Deputy Sheriff.

¶ 4.   Thereafter, Plaintiff proceeded to drive the vehicle towards the exit of the parking lot, whereupon police officers used their guns to fire at the car.  *Id.* at ¶ 7; Pl.'s 7.1 Statement at ¶ 3.  Eventually, Plaintiff's vehicle came to a stop and police officers arrested him.  Defs.' 7.1 Statement at ¶¶ 8-9; Pl.'s 7.1 Statement at ¶¶ 4-5.

Plaintiff was charged with, *inter alia*, Attempted Aggravated Assault on a Police Officer, Burglary in the Third Degree, and Criminal Possession of Stolen Property in the Fourth Degree.  Defs.' 7.1 Statement at ¶ 12; Pl.'s 7.1 Statement at ¶ 8.  On January 25, 2006, a jury found Plaintiff guilty of all three of the aforementioned crimes.  Defs.' 7.1 Statement at ¶¶ 13-14; Pl.'s 7.1 Statement at ¶ 8.  On February 9, 2006, Plaintiff was sentenced to the following terms of incarceration: two and a half to four (2 ½-4) years for Criminal Possession of Stolen Property in the Fourth Degree; three and a half to seven (3½-7) years for Burglary in the Third Degree; and a determinate term of fifteen (15) years for Attempted Aggravated Assault upon a Police Officer.  Defs.' 7.1 Statement at ¶¶ 15-16; Pl.'s 7.1 Statement at ¶¶ 8-9.

By his Complaint, Plaintiff alleges that the Defendants used excessive force when they opened fire on the moving vehicle he was driving and then conspired to cover-up their alleged attempt to kill him by destroying evidence, issuing false reports, tampering with evidence, and committing perjury.  *See generally* Compl.

## II. DISCUSSION

### A.  Standards of Review

Because Defendants have moved for dismissal of the Complaint pursuant to both Federal Rule of Civil Procedure 56(c) and Rule 12(b)(6), we will review the applicable review standards under both Rules.

1.   *Summary Judgment Standard*

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is] a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983);

*-4-*

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### 2. *Motion to Dismiss Standard*

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may

take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1950 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or

she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* __ U.S. __ 129 S.Ct. at 1950-51.

### B.  Plaintiff's Procedural Objections to the Motion

In his Response to Defendants' Motion, Plaintiff argues that the Court should abstain from considering the Motion for the following two reasons: (1) Defendants' attorney, Frank W. Miller, Esq., improperly notarized the Affidavit of Service attached to the Motion; and (2) the Motion is untimely because Plaintiff has not yet had an opportunity to engage in meaningful discovery.  Dkt. No. 32-2, Pl.'s Mem. of Law at pp. 7-13.

Plaintiff asserts that because Mr. Miller is a person with "a financial interest in the outcome of this matter," New York Executive Law § 138[2] precludes him and anyone in his office from notarizing motion papers.  *Id.* at pp. 8-9.  Plaintiff argues that Miller's pecuniary interest in the litigation creates a conflict of interest.  However, as Defendants point out, New York Executive Law § 135 specifically permits attorney notary publics to "administer an oath or affirmation to or take the affidavit or acknowledgment of his client in respect of any matter, claim, action or proceeding." N.Y. EXEC. LAW § 135.  As such, Defendants' Affidavit of Service, sworn to by Cecelia A. Shortsell and notarized by Miller on March 24, 2009, was not defective in any way.

Secondly, Plaintiff asserts that Defendants' Motion is premature and was filed as "an attempt

---

[2] New York Executive Law § 138 prevents a stockholder, director, officer, or employee of a corporation from both making and accepting an acknowledgment.

to avoid discovery" and, moreover, was brought in bad faith.  Pl.'s Mem. of Law at p. 11.  Plaintiff

cites to, *inter alia*, *Celotex Corp. v. Catrell,* 477 U.S. 317, 322 (1986) in support of his argument that

a motion for summary judgment should not be considered prior to the close of discovery.  *Id.*

      Federal Rule of Civil Procedure 56(f) provides that when a party, in responding to a motion

for summary judgment, submits an affidavit showing that "for specified reasons, it cannot present

facts essential to justify its opposition," a court has the option to, *inter alia*, deny the summary

judgment motion or order a continuance allowing for more discovery.  In this Circuit, when a party

submits a Rule 56(f) affidavit asserting that a motion for summary judgment is premature, courts

apply a four-part test addressing: (1) the nature of the uncompleted discovery; (2) how the facts

sought are reasonably expected to create genuine issues of material fact; (3) what efforts the affiant

has made to obtain those facts; and (4) why those efforts were unsuccessful.  *Paddington Partners*

*v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994) (citations omitted) (cited in *Davidson v. Talbot*,

2005 WL 9282620, at *16 (N.D.N.Y. Mar. 31, 2005)).

      In this case, Plaintiff has not submitted an affidavit pursuant to Rule 56(f).  However,

Plaintiff asserts that "[o]n or about February 13, 2009, [he] moved for discovery/interrogatory from

the Defendants in a good faith effort, which was not answered."  Pl.'s Mem. of Law at p. 11.  In

addition, Plaintiff filed a Letter-Request, dated Feb. 15, 2010, seeking permission from the Court

to file a motion to compel discovery.  Dkt. No. 45, Lt., dated Feb. 15, 2010.  But, neither in his

Response to Defendants' Motion, nor in his Letter-Request does Plaintiff specifically identify the

discovery he seeks.  *See id.*; Pl.'s Mem. of Law.  The Second Circuit recently held that "a bare

assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is

insufficient to justify the denial of summary judgment."  *In re Dana Corp.*, 574 F.3d 129, 149 (2d

Cir. 2009).  Therefore, we find Plaintiff's generalized objections unavailing and we will proceed to the merits of Defendants' Motion.  However, as discussed *infra*, we recommend that the bulk of Defendants' Motion be denied.  And, the claims for which we recommend dismissal have all been analyzed under a motion to dismiss standard for failure to state a plausible claim.  Therefore, Plaintiff's alleged lack of discovery would not have altered our analysis of the facial validity of those claims.

Even assuming Plaintiff's allegations regarding Defendants' failure to participate in discovery are true, Plaintiff has in no way been prejudiced by such actions.  We acknowledge that a scheduling order was never issued in this case.  *See generally* Dkt.  If the District Court adopts our recommendations, we will issue a scheduling order that will establish discovery and motion deadlines.  Therefore, Plaintiff's Letter-Request seeking leave to file a motion to compel is **denied** at this juncture without prejudice to Plaintiff re-filing his request should discovery issues arise in the future.

### C.  Excessive Force

Plaintiff claims that the Defendants' use of firearms against him on January 11, 2005, constituted an excessive use of force in violation of his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  Compl. at ¶¶ 118-24.

The Supreme Court has made clear that a claim of excessive force during the course of an arrest, investigatory stop, or other seizure of one's person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard, wherein a court balances "the nature and quality of the intrusion on the individual's Fourth Amendment rights against the countervailing government interests at stake."  *Graham v. Connor*, 490 U.S. 386, 394-96 (1989).  The Eighth Amendment

standard "applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions;" i.e., during the post-conviction stages. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). The substantive due process rights provided by the Fourteenth Amendment apply only in situations where the protections provided by the Fourth and Eighth Amendments are not applicable, such as when a suspected felon is killed during a police chase. In that scenario, the felon is not "seized" so as to implicate the Fourth Amendment, nor is he past the prosecution stage, where the Eighth Amendment would apply. Therefore, the protections of the Fourteenth Amendment would apply in that situation. *Id.* Finally, the Fifth Amendment's due process protections are not applicable in the context of this excessive force claim. Therefore, we recommend that Plaintiff's Eighth, Fifth, and Fourteenth Amendment excessive force claims be **dismissed**.

When analyzing a Fourth Amendment excessive force claim, the pertinent question is whether government officials acted reasonably "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor et al.*, 490 U.S. at 397 (citations omitted). Thus, the inquiry is an objective one that analyzes whether a reasonable officer would have acted similarly under the same specific facts and circumstances, including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

1. *Collateral Estoppel and the Rooker-Feldman Doctrine*

Defendants posit that given Plaintiff's conviction on the charge of Attempted Aggravated Assault on a Police Officer, he is collaterally estopped from "re-litigating" this issue in the present

civil action.  Collateral estoppel, also known as issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *Sullivan v. Gagnier*, 25 F.3d 161, 166 (2d Cir. 2000) (quoting *Ryan v. New York Tel. Co.*, 62 N.Y. 2d 494 (1984).  When considering the affirmative defense of collateral estoppel, federal courts "must apply the rules of collateral estoppel of the state in which the prior judgment was rendered," which in this case is New York.  *Sullivan v. Gagnier*, 25 F.3d at 166 (citations omitted).  Under New York law, collateral estoppel applies only when "the issue in question was actually and necessarily decided in a prior proceeding, and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding."  *Colon v. Coughlin*, 58 F.3d at 869 n.2.

Thus, a claim will be precluded only if the party asserting collateral estoppel can prove that the claim was "actually litigated and necessarily decided in the prior proceeding."  *Sullivan v. Gagnier*, 25 F.3d at 166 (noting that the burden lies with the party moving for preclusion).  That question necessitates a factual inquiry that will often involve "a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits."  *Id.*

In this case, Plaintiff was convicted of, *inter alia*, Attempted Aggravated Assault on a Police Officer.  Dkt. No. 30-1, Frank W. Miller, Esq., Decl., dated Mar. 24, 2009, Ex. C, Sentence and Commitment Order, dated Feb. 9, 2006.  That Plaintiff was convicted of such crime would not preclude his § 1983 action unless we were to find that the "facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of

excessive force." *Sullivan v. Gagnier*, 25 F.3d at 166.

Here, in support of their Motion, Defendants have submitted excerpts from the transcript of Plaintiff's criminal trial including portions of Plaintiff's attorney's cross-examinations of the police officers and summation as well as portions of the sentencing transcript. Miller Decl., Exs. E, Trial Tr., dated Jan. 23-25, 2006 & D, Sentencing Tr., dated Feb. 9, 2006. No other portions of the trial transcript have been provided. Defendants assert that Plaintiff was "attempting to assault the officer who was blocking his exit," from the parking lot, Defs.' Mem. of Law at p. 4, however, without the benefit of the complete trial transcript, we cannot determine what specific facts were the basis for Plaintiff's Attempted Aggravated Assault on a Police Officer conviction.

In any event, it is clear that the allegations Plaintiff brings in this civil action were not fully litigated in his criminal trial. A person is guilty of Attempted Aggravated Assault on a Police Officer when, "with intent to cause serious physical injury to a person whom he knows or reasonably should know to be a police officer or a peace officer engaged in the course of performing his official duties, he [attempts to cause] such injury by means of a deadly weapon or dangerous instrument." N.Y. PENAL LAW §§ 120.11 & 110. Plaintiff alleges that the police officers violated his Fourth Amendment rights by opening fire on him as he attempted to leave the Salvation Army parking lot in a stolen vehicle. Whether the police officers used a reasonable amount of force was not a question of fact decided by the jury at Plaintiff's criminal trial. Although the pieces of the trial transcript provided show that Plaintiff's attorney vigorously cross-examined the police officers as to the necessity for their use of force against Plaintiff, and that the trial judge remarked during sentencing that he felt the police officers had acted justly, *see* Miller Decl., Exs. D & E, the question of the reasonableness of the amount of force used against Plaintiff was never presented before the

jury.  Indeed, during the prosecutor's summation, a portion of which Plaintiff attached to his

Opposition, he urged the jury not to consider whether the fusillade was warranted:

> The defense tries to distract you throughout this trial.  He tries to pick apart at
> different things because that's all he's got.  What else is he going to say?  He wants
> to take the focus off his defendant and the burglary and the attempted assault on a
> police officer, trying to argue they shouldn't have shot or make it about the Dewitt
> Police Officers training.  As I said in jury selection, this shooting is irrelevant as to
> why we're here. . . . The fact that these officers shot doesn't change [Kimbrough's]
> intent. . . . It doesn't matter what [the police officers] could have done.  The bottom
> line is they are not on trial, the defendant is.

Dkt. No. 32-4, Pl.'s Opp'n to Defs.' Mot., Ex. A-1, Trial Tr. at pp. 567-69.

As the prosecutor's comments suggest, the elements of the crime of Attempted Aggravated

Assault on a Police Officer do not at all implicate the reasonableness of the police officers' actions.

If, hypothetically speaking, both the criminal charges and Plaintiff's civil excessive force claim were

tried together, it would not necessarily be inconsistent for the trier of fact to conclude both that

Plaintiff attempted to assault a police officer and that police officers used an unreasonable amount

of force under the Fourth Amendment.  Therefore, we find that Plaintiff's Fourth Amendment claim

is not precluded by the doctrine of collateral estoppel.  *See, e.g., Hardy v. Plante et al.*, 2009 WL

249787, at *4 (N.D.N.Y. Feb. 3, 2009) (finding § 1983 claim not precluded where plaintiff was

found guilty at trial of resisting arrest); *see also McNamee v. City of New York*, 2002 WL 441177,

at *4 (S.D.N.Y. Mar. 21, 2002) (Fourth Amendment excessive force claim not precluded where

plaintiff was found guilty at trial of attempted murder of a police officer).

For the same reasons, consideration of Plaintiff's Fourth Amendment claim does not violate

the *Rooker-Feldman* doctrine, under which "a United States District Court has no authority to

review final judgments of a state court in judicial proceedings."  *D.C. Court of Appeals v. Feldman*,

460 U.S. 462, 482 (1983); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

However, while Plaintiff is not precluded from bringing a Fourth Amendment claim under § 1983, he is precluded from arguing that he did not attempt to assault a police officer on January 11, 2005, because that question has been fully litigated and decided against him at trial.  *See, e.g., Hardy v. Plante et al.*, 2009 WL 249787, at *4.  Based on the sworn allegations in Plaintiff's Complaint and the portions of the trial transcript provided, it is evident that such conviction was based upon Plaintiff's attempted assault of Officer Grecco, who stood in the way of Plaintiff's car as he attempted to exit the parking lot.  Compl. at ¶¶ 104-07 & 111; Pl.'s Opp'n, Ex. A1, Trial Tr. at pp. 499-509 (cross-examination of Grecco).  However, absent a more complete record, the Court cannot ascertain the detailed sequence of actions forming the basis of Plaintiff's conviction for attempted assault.  *See Sullivan v. Gagnier*, 25 F.3d at 166 ("[L]acking any transcript of the state court proceedings, it is difficult to perceive how such an inquiry could take place.").  Accordingly, we must proceed with the general notion that Plaintiff attempted to assault Officer Grecco with a stolen car in an attempt to exit the Salvation Army parking lot.

### 2. *Failure to State a Claim*

Defendants assert that Plaintiff's excessive force claims should be dismissed for failure to state a claim upon which relief could be granted. Defs.' Mem. of Law at pp. 11-13.  Specifically, Defendants posit that, given his conviction for attempted assault, Plaintiff has failed to allege that an unreasonable amount of force was used against him.

Plaintiff makes the following allegations in his Complaint: After exiting the Salvation Army, he got into the stolen Volvo in the parking lot.  After moving forward "a few feet" toward the exit of the parking lot, two shots were fired at the front of his windshield on the driver's side, where he was sitting, but they did not pierce the windshield.  Another two shots were fired from a tree where

a police officer was located, causing Plaintiff to duck down in order to avoid being shot.  The front and right passenger side of the vehicle was bombarded with gun fire from shotguns, rifles, and other high-powered weapons as the car moved slowly towards the exit.  As Plaintiff attempted to turn onto the street, he hit a snow bank and lost control of the car, which stopped momentarily along with the gunfire.  Plaintiff again attempted to accelerate, which prompted a second round of gunfire, resulting in Plaintiff being wounded by two bullets that struck his thighs and his left hand, respectively. Plaintiff then lost control of the car and crashed into a roadside ditch, where he surrendered to police.  Compl. at ¶¶ 18-32.  Finally, Plaintiff alleges that Defendants attempted to kill him and used deadly force against him without justification.  *Id.* at ¶¶ 120 & 123.

The above allegations are sufficient to state a Fourth Amendment claim under § 1983. Plaintiff has alleged that the deadly force used against him was unreasonable under the circumstances and that he was injured as a consequence.  *Graham v. Connor*, 490 U.S. at 397. Moreover, Plaintiff's conviction for attempted assault, by itself, does not preclude his Fourth Amendment claim.  Plaintiff cannot contest that he attempted to assault Officer Grecco, but, as we discussed earlier, his Fourth Amendment claim rests upon the alleged unreasonableness of the amount of force used in response to his actions, not whether he was guilty of any particular crime. Without a doubt, the fact of Plaintiff's attempted assault conviction is highly relevant to the question of whether the officers' actions were reasonable, but it does not totally undermine all of Plaintiff's allegations, not the least of which his contention that the Defendants continued to fire on his vehicle and wounded him even after his car passed Grecco and therefore ceased to be a threat to him.  *See* Compl. at ¶¶ 26-31, 72, & 114; Pl.'s Mem. of Law at p. 15 ("[T]here is no evidence before the Court which show[s] why the officers continued to shoot on and at Plaintiff once the vehicle passed

Grecco."); *see also O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003) ("It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious injury to the officer or others.") (citations omitted); *Tennessee v. Garner*, 471 U.S. at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

Therefore, we find Plaintiff has stated a facially valid Fourth Amendment excessive force claim under § 1983.[3]

### 3. *Qualified Immunity*

In their tertiary attack on Plaintiff's excessive force claim, Defendants assert they are entitled to qualified immunity. Qualified immunity will shield "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mollica v. Volker*, 229 F.3d 366, 370 (2d Cir. 2000). Thus, government officials sued for damages "are entitled qualified immunity if 1) their actions did not violate clearly established law, or 2) it was objectively reasonable for them to believe that their actions did not violate such law." *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citation omitted).[4] The objectively reasonable test will

---

[3] We note that Defendants have not challenged Plaintiff's common law recklessness and negligence claims surrounding the alleged use of excessive force. *See generally* Defs.' Mem. of Law. Therefore, we need not address those claims.

[4] In a recent decision, *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808 (2009), the Supreme Court overruled its previous holding in *Saucier v. Katz*, 533 U.S. 194 (2001), which *required* district courts addressing a claim of qualified immunity to make an initial determination as to whether the facts alleged or shown by a plaintiff make out a violation of a constitutional right. In *Pearson*, the Supreme Court gave district courts the discretion to address that question or
(continued...)

be met "'if [officials] of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (further citation omitted)).

As Defendants concede, "[t]he right to be free of excessive force is clearly established, and therefore the question in all excessive force cases for qualified immunity purposes is whether it was reasonable for the officer to believe that his action did not violate the law under the circumstances." Defs.' Mem. of Law at pp. 16-17.  Here, the circumstances of the use of force have not been completely laid out before the Court.  What we know is that Plaintiff attempted to assault Officer Grecco with his car and that the other officers opened fire as Plaintiff drove towards Grecco.  We do not know when the shooting ceased.  We do not know if, and to what extent, Plaintiff ceased to pose a threat to Grecco and/or others during his attempted escape.  Absent any record evidence to the contrary,[5] we are left with Plaintiff's allegation that, *inter alia*, a second barrage of bullets were fired at him after he passed the location where Grecco was standing.

Therefore, we cannot conclude at this juncture that as a matter of law it was reasonable for Defendants to believe that their actions were constitutional.  *See, e.g., Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 (2d Cir. 2003) (denying summary judgment on qualified immunity grounds because the question of whether the police officer could have reasonably believed his actions to be constitutional was unanswerable prior to the determination of factual questions

---

[4](...continued)
not, depending upon "the circumstances in the particular case at hand."  129 S. Ct. at 818.

[5] The newspaper articles and police reports Plaintiff has submitted in opposition to Defendants' Motion are, without any proper foundation being offered, hearsay evidence that cannot be considered by the Court on a motion for summary judgment.  In any event, those documents do not begin to fill in the gaping factual holes in the record before us.  *See* Pl.'s Opp'n, Ex. A, Newspaper Articles & Police Reps.

*-17-*

concerning the circumstances of the police officer's use of force).  As such, we recommend against dismissal of the Complaint on qualified immunity grounds.

### 4.  *Failure to Protect*

Plaintiff accuses Defendants Lutz, Mason, Grecco, Bury, and Belcher of failure to protect him during their use of force.  Compl. at ¶ 121.  Police officers can be held liable under § 1983 for failure to intervene in a situation where excessive force is being used if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997).  Whether an officer can be held liable for failure to intervene is generally a question of fact for the jury to decide.  *See Benitez v. Ham*, 2009 WL 3486379, at *25 (N.D.N.Y. Oct. 21, 2009) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Given Plaintiff's allegations of excessive force, his connected failure to protect claims should not be dismissed at this point.  Again, the record before us does not provide the information necessary to decide this issue as a matter of law.  Specifically, we do not know when the shots were fired and by whom, and therefore cannot assess whether any of the Defendants had a reasonable opportunity to intervene.  Although Plaintiff may have a steep hill to climb given the likely rapid succession of events that transpired, he has stated a facially viable, if thin, failure to protect claim. *See, e.g., Hickey v. City of New York*, 2004 WL 2724079, at *13 (S.D.N.Y. 2004) (denying summary judgment on plaintiff's failure to protect claim despite difficulty of proving such claim at trial).

Therefore, we recommend Defendants' Motion be **denied** as to Plaintiff's failure to protect claims.

*-18-*

### D. *Monell* Claim

Defendants assert Plaintiff has failed to state a valid cause of action for municipal liability against the Town of Dewitt under § 1983. Pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. 658, 691 (1978). A municipality may only be held liable for constitutional claims under § 1983 if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] . . . [or] governmental 'custom' even though such a custom has not received formal approval through the . . . [municipality's] official decision[-]making channels." *Id.* at 690-91.

Defendants contend that Plaintiff's *Monell* claim must fail because he has not alleged a municipal custom, policy, or practice, pursuant to which Defendants acted. Defs.' Mem. of Law at pp. 18-19. Although we agree that Plaintiff has not identified a policy or custom pursuant to which Defendants acted, he alleges that the Dewitt Police Department failed to adequately train its officers. Compl. at ¶¶ 183-84. The Supreme Court has made clear that there is no heightened pleading standard for *Monell* claims. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (holding that no heightened pleading standard apart from the requirements of FED. R. CIV. P. 8 may be applied to *Monell* claims) (cited in *Payne v. Axelrod*, 871 F. Supp. 1551, 1556 n.7 (N.D.N.Y. 1995)); *see also Nesbitt v. County of Nassau*, 2006 WL 3511377, at *3 (S.D.N.Y. Dec. 6, 2006) (holding that *Leatherman* abrogated the oft-quoted language from *Dwares v. City of New York,* 985 F.2d 94 (2d Cir. 1993) that "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."). However, Plaintiff must still

state a plausible claim of municipal liability under the standard set forth in *Ashcroft v. Iqbal*, __ U.S.
__, 129 S.Ct. 1937, 1949 (2009).  *See supra* Part II.A.2.  Given Plaintiff's excessive force
allegations, we find Plaintiff has stated a facially plausible *Monell* claim against the Town of Dewitt
Police Department.  Indeed, it is hard to fathom how a plaintiff could provide more detail at the
pleading stage regarding a *Monell* claim based on failure to train.  Although Plaintiff may find it
difficult to prove his municipal liability claim, his *pro se* Complaint satisfies the liberal pleading
standard of FED. R. CIV. P. 8 and states a plausible claim under *Iqbal*.

For the above reasons, we find that Plaintiff has stated a facially valid *Monell* claim, and it
is recommended that Defendants' Motion be **denied** as to that claim.

### E.  Slander/Defamation Claim

In his fourth Cause of Action, Plaintiff accuses Defendant Eugene Conway of slandering him
and thereby violating his constitutional rights.[6]  Compl. at ¶¶ 41, 52, & 137-141.  Specifically,
Plaintiff claims Conway told reporters that Plaintiff tried to run over two police officers and then
subsequently changed his story, stating there was only one officer in harm's way.  *Id.* at ¶¶ 41 & 52.

A claim of slander or defamation is a state law issue and is therefore not actionable under
§ 1983.  *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000) (citing *Paul v. Davis*, 424 U.S. 693,
699-701 (1976)).  However, a § 1983 plaintiff may state a valid constitutional claim under the
"stigma plus" doctrine if he shows: "(1) the utterance of a statement sufficiently derogatory to injure
his or her reputation, that is capable of being proved false, and that he or she claims is false[;] and
(2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights."
*Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks and citation

---

[6] Plaintiff does not raise his slander/defamation claim on state or common-law grounds.  *See* Compl. at ¶¶ 137-141.

omitted).

On the first prong, we find that Plaintiff is precluded from arguing that Conway's statement that he tried to run over a police officer was false because he was convicted of Attempted Assault of a Police Officer based on his act of driving his vehicle towards Grecco. *See supra* Part II.B. Also, to the extent Conway incorrectly stated that Plaintiff attempted to run over two police officers instead of one, such alleged error would not injure Plaintiff's reputation any more than his conviction for attempted assault.

Because Plaintiff is not capable of proving the substance of Conway's alleged statements to be false and because his reputation was not injured, we recommend **dismissal** of this claim.

### F.  Conspiracy

To support a conspiracy claim under § 1983,[7] a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).

Plaintiff alleges that the Defendants "formed an unlawful conspiracy to conspire[] to file[] false reports, destroyed evidence, tampered with the evidence, remove evidence, and suppressed vital evidence in their attempt to obstruct justice which caused serious injuries and damages to the Plaintiff."[8]  Compl. at ¶ 126.  In addition, Plaintiff accuses Defendants of committing perjury and creating false statements and incident reports "in an attempt to justify the unlawful discharge of firearms on the Plaintiff." *Id.* at ¶¶ 132-33.  Finally, Plaintiff accuses Defendants Bury, Mason, and

---

[7] Plaintiff does not assert a conspiracy claim under 42 U.S.C. § 1985. *See generally* Compl.

[8] Plaintiff makes clear in his Response that he does not bring a claim for malicious prosecution.  Pl.'s Mem. of Law at p. 19.

Grecco of covering up the actual facts surrounding the shooting and of giving false sworn testimony at trial, *id.* at ¶¶ 145-46, 154-55, & 162-64; he accuses Defendants Lutz, Belcher, and the Town of Dewitt of destroying, tampering with, and manufacturing evidence, *id.* at ¶¶ 172, 178, 182 & 186.

First, to the extent Plaintiff's conspiracy claim is an attempt to challenge the convictions rendered at his criminal trial, such claim is barred under the "favorable termination rule" of *Heck v. Humphrey*, 512 U.S. 477 (1994). In that case, the Supreme court held that to recover damages for an allegedly unconstitutional conviction or imprisonment, or for any other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, "a § 1983 plaintiff must prove that the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid . . ., or called into question by a federal court's issuance of a writ of habeas corpus . . . ." *Heck v. Humphrey*, 512 U.S. at 486-87. Plaintiff does not allege that his conviction has been overturned and therefore, his claims concerning tampering of evidence and false testimony given at his trial are precluded.

In any event, Plaintiff's conspiracy claims are stated in conclusory terms and do not constitute plausible constitutional claims under § 1983. Plaintiff does not identify the evidence that was allegedly tampered with and/or destroyed, nor does he identify the allegedly perjured statements made by Defendants. *See Bell. Atl. Corp. v. Twombly*, 550 U.S. at 545 (stating that a valid claim must have enough factual allegations "to raise a right to relief above the speculative level").

For these reasons, it is recommended that Plaintiff's conspiracy claims be **dismissed**.

### G. Equal Protection

Plaintiff makes reference in his Complaint to the Equal Protection Clause of the Fourteenth Amendment. To establish a valid equal protection claim based on selective enforcement, a plaintiff

must demonstrate that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d at 609-10.  In this case, Plaintiff does not allege that he was selectively treated as compared to others similarly situated.  Rather, he alleges Defendants used excessive force against him during his attempted escape from the scene of a burglary.  Therefore, it is recommended that this claim be **dismissed**.

### H.  Failure to Serve

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[9]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id*.

In this case, there is no indication that Plaintiff has properly served Defendant John Doe,[10] whom he characterizes as unknown "police officers and administrators employed by the Town of Dewitt." Compl. at ¶ 11.  At various points in his Complaint, Plaintiff refers parenthetically to Defendant John Doe when describing his claims against the Town of Dewitt Police Department.  *See, e.g., id.* at ¶ 181 ("Defendant TOWN OF DEWITT POLICE DEPARTMENT (JOHN DOE)"

---

[9] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

[10] The Docket incorrectly states that Frank W. Miller, Esq., has appeared on behalf of Defendant John Doe. *See* Dkt. No. 17, Defs.' Answer.

(emphasis in original)).  Thus, it is unclear whether Plaintiff seeks to assert separate and independent claims against John Doe(s), or whether Defendants Town of Dewitt Police Department and John Doe are one and the same.  To the extent Plaintiff seeks to maintain cause or causes of action against John Doe that is separate and apart from his *Monell* claim against the Dewitt Police Department, the Court shall afford Plaintiff **thirty (30) days** from the filing date of this Report-Recommendation and Order to show cause why his Complaint should not be dismissed as against Defendant John Doe for failure to serve.  **Plaintiff is warned that his failure to show cause will result in this Court recommending dismissal of all his claims against Defendant John Doe.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment and/or to Dismiss (Dkt. No. 30) be **GRANTED in part** and **DENIED in part** in accordance with the above opinion; and it is further

**RECOMMENDED**, that should the District Court adopt this Report-Recommendation, Defendant Eugene Conway will be **DISMISSED** from this action; and it is further

**ORDERED**, that **within thirty (30) days** of the filing date of this Report-Recommendation and Order, Plaintiff show cause why Defendant John Doe should not be dismissed from this action due to Plaintiff's failure to effectuate service of process pursuant to Fed. R. Civ. P. 4(m).  **Plaintiff is warned that his failure to respond to this Order to Show Cause within thirty (30) days of the filing date of this Report-Recommendation and Order will result in this Court recommending dismissal of his claims against this Defendant**; and it is further

**ORDERED**, that Plaintiff's Letter-Request seeking leave to file a motion to compel (Dkt.

No. 45) is **DENIED** at this juncture; and it is further

      **ORDERED**, that in the event the District Court accepts the above Report-Recommendation, the Clerk of the Court shall return this file to the undersigned for the issuance of a scheduling order; and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 5, 2010
       Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge