UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**EUGENE F. KIMBROUGH,**

                 **Plaintiff,**            9:08-cv-003
                                                           (GLS/RFT)

                 v.

**TOWN OF DEWITT POLICE
DEPARTMENT, BRIAN LUTZ,
EDWARD W. MASON, JR.,
WAYNE GRECCO, KEITH B. BURY,**
and **CRAIG R. BELCHER,**

                 **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Eugene F. Kimbrough | |
| Pro Se | |
| 06-B-0487 | |
| Attica Correctional Facility | |
| Box 149 | |
| Attica, NY 14011 | |
| | |
| **FOR THE DEFENDANTS:** | |
| *Town of Dewitt Police Dept.,* | |
| *Lutz, Mason, Grecco and Bury* | |
| Office of Frank W. Miller | FRANK W. MILLER, ESQ. |
| 6575 Kirkville Road | JOHN A. SICKINGER, ESQ. |
| East Syracuse, NY 13057 | |
| | |
| *Belcher* | |
| GORDON J. CUFFY | KAREN ANN BLESKOSKI |
| County Attorney | KATHLEEN M. DOUGHERTY |
| Onondaga County Attorney's Office | MICHAEL P. McCARTHY |

John H. Mulroy Civic Center            Deputy County Attorneys
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff *pro se* Eugene F. Kimbrough commenced this action pursuant to 42 U.S.C. § 1983, alleging defendants[1] violated his constitutional rights. (*See* Compl., Dkt. No. 1.) Pending are Dewitt defendants and Belcher's motions for summary judgment. (*See* Dkt. Nos. 114, 132.) For the reasons that follow, defendants' motions are granted.

### II. Background[2]

At approximately 11:37 p.m. on January 11, 2005, Kimbrough triggered a silent alarm while he was burglarizing a Salvation Army building

---

[1] Town of Dewitt Police Department, Officers Brian Lutz, Edward W. Mason, Jr., Wayne Grecco, Keith B. Bury (collectively "Dewitt defendants"); and Deputy Sheriff Craig R. Belcher.

[2] In his response, Kimbrough denies several of the facts asserted by defendants, yet fails to include citations to the record to support these denials. (*See* Dkt. No. 140, Attach. 2 at 8-9; Dkt. No. 143); N.D.N.Y. L.R. 7.1(a)(3). Nevertheless, the court accepts the "properly supported facts contained in defendant[s'] Rule 7.1 statement[s]." *See Brown v. White*, No. 9:08-cv-200, 2010 WL 985184, at *5-6 (N.D.N.Y. Mar. 15, 2010).

in Dewitt, New York.  (Dewitt defendants' Statement of Material Facts ("SMF") ¶¶ 1-2, Dkt. No. 117; Belcher SMF ¶ 3, Dkt. No. 132, Attach. 3.)  In response to the alarm, Sgt. Bury was dispatched to the scene and arrived roughly ten minutes later.  (Belcher SMF ¶¶ 3-4.)  When he arrived, Sgt. Bury assessed the situation, identified a stolen vehicle parked in front of the building, and then requested additional backup.  (*Id.* ¶ 4.)  Because he was alone and unsure of how many individuals were involved in the burglary, Sgt. Bury exited his vehicle with his AR-15 rifle.  (*Id.* ¶ 5.)  As he approached the building, "he observed the silhouette of a person walking from behind the building."  (*Id.* ¶ 6.)  Sgt. Bury started toward the individual, later identified as Kimbrough, "yelling 'stop, police, hold it.'" (*Id.*)  Kimbrough initially stopped, but "then ran back behind the building." (*Id.*)

By 12:05 a.m., several officers had responded, including Officers Mason and Lutz of the Dewitt Police Department, and Onondaga County Deputy Sheriff Belcher, with his canine partner, Athos.  (*Id.* ¶¶ 8-10.)  "As Deputy Belcher and Sgt. Bury were talking, Deputy Belcher observed . . . [Kimbrough] exit the building and walk towards the stolen vehicle."  (*Id.* ¶ 12.)  With their weapons drawn, Sgt. Bury and Deputy Belcher "began rapidly approaching" Kimbrough, identifying themselves as police and

3

yelling for him to stop. (*Id.* ¶¶ 13, 15.) Kimbrough disregarded these orders, "got into the vehicle and backed the vehicle out of the parking space into the road." (*Id.* ¶ 16.) Although he momentarily paused, Kimbrough "began accelerating down the road at a high rate of speed." (*Id.* ¶ 17.)

It was at this time that Sgt. Bury, Deputy Belcher and Officer Mason all saw that Officer Grecco was standing directly in the path of the vehicle.[3] (*Id.* ¶¶ 18, 24, 29.) Fearing for Officer Grecco's safety, Sgt. Bury and Officer Mason opened fire on Kimbrough's vehicle, firing seven and five shots respectively; two of the bullets pierced the vehicle's exterior and struck Kimbrough.[4] (*Id.* ¶¶ 19-21, 25-28; Compl. ¶¶ 28-30.) Both claim to have stopped firing once Officer Greco was no longer in harms way. (Belcher SMF ¶¶ 21, 27.) And while the Dewitt Police Department incident

---

[3] Notably, Kimbrough does not deny that Officer Grecco was directly in the path of the vehicle he was driving. (*See* Dkt. No. 140, Attach. 2 at 8.) While he admits that "a vehicle could be considered a deadly weapon," Kimbrough nevertheless attempts to shift the blame to Officer Grecco by stating "Plaintiff drove a vehicle that an officer placed himself in front of." (*Id.*)

[4] Although only Sgt. Bury and Officer Mason discharged their weapons, Deputy Belcher and Officer Grecco concurred with the need for deadly force, yet elected not to use it because of the possibility of cross-fire with the other officers on the scene. (Belcher SMF ¶¶ 29-32, 37-38.)

report states that four of Sgt. Bury's rounds were fired when "the vehicle [was] beyond the point in which [Officer] Grecco's life would have been in danger," Deputy Belcher estimated it was "a matter of 2-5 seconds" between the time Kimbrough began driving until the shooting stopped. (Dkt. No. 140, Attach. 4 at 7; Belcher SMF ¶ 40.)  The incident ended when Kimbrough's vehicle left the road and he surrendered to the officers. (Compl. ¶ 32.)

In his Complaint, Kimbrough alleges ten causes of action against various defendants.  (*See id.* ¶¶ 118-88.)  In a September 15, 2010 Memorandum-Decision and Order, this court dismissed Kimbrough's Fifth, Eighth, and Fourteenth Amendment excessive force claims, equal protection claim, conspiracy claims, and slander and defamation claim. (*See generally* Dkt. No. 63.)  But, the court denied defendants' motion with respect to Kimbrough's Fourth Amendment excessive force, failure to protect, and *Monell* claims.  (*See id.*)

### III.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). When evaluating the material facts, the court "construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [its] favor." *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010). Thus, the movant must demonstrate the absence of genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999), a burden it can meet "if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. *See Celotex*, 477 U.S. at 324. "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). Moreover, material disputes must be based on specific facts as reflected in the adverse party's response, by affidavits or as otherwise authorized by Rule 56, *see St.*

6

*Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000), and affidavits must be based on personal knowledge, *see Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576, 581 (2d Cir. 1993). The bald assertion of some alleged factual dispute will not defeat a properly supported motion. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Naturally, reasonable inferences may defeat a summary judgment motion, but only when they are supported by affirmative facts and relevant, admissible evidence. *See* Fed. R. Civ. P. 56(c)(4); *Spinelli v. City of New York*, 579 F.3d 160, 166-67 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## IV. Discussion[5]

---

[5] Notably, Kimbrough was granted permission to file sur-replies addressing the affidavits of defendants Bury, Grecco and Mason, which were included with Dewitt defendants' reply. (*See* Dkt. Nos. 146-48, 150.) Despite being instructed that his submission was due by February 1, 2012, Kimbrough has, to date, failed to file his sur-replies. Nevertheless, the court's decision does not rely on the affidavits.

Dewitt defendants and Belcher both argue that Kimbrough's claims fail as a matter of law because the use of deadly force was justified in this case. (*See* Dkt. No. 132, Attach. 18 at 4-7; Dkt. No. 118 at 2-5.) In his response, Kimbrough asserts various procedural bars to defendants' motions,[6] and alternatively argues that issues of fact remain that would render summary judgment inappropriate. (*See* Dkt. No. 140, Attach. 3 at 1-25.) Since the issue of excessive force is dispositive, the court addresses it first.

## A.     Excessive Force

"[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The standard governing excessive force is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

---

[6] Kimbrough argues defendants' motions should be denied under Fed. R. Civ. P. 56(e), for defective service of the instant motions, and pursuant to the doctrine of collateral estoppel because this is Dewitt defendants' second motion for summary judgment. (*See* Dkt. No. 140, Attach. 3 at 1-9.) Simply put, these claims are meritless.

motivation." *Id.* at 397 (citations omitted). Stated another way, deadly force is permissible where "a reasonable officer would have had probable cause to believe that there was a threat of serious physical harm to himself or others." *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010) (citing *Graham*, 490 U.S. at 396-97); *see also Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005) ("[A]n officer's decision to use deadly force is objectively reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.") (internal quotation marks and citations omitted).

In evaluating the reasonableness of the force used, courts must "careful[ly] balance[] . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). Accordingly, the standard contemplates an evaluation of the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citation omitted). However, this inquiry is fact specific, and thus summary judgment is only appropriate where "no

9

reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citation omitted).

In *Waterman v. Batton*, police officers began firing as Waterman's vehicle accelerated toward them at less than 15 miles per hour, and continued to do so after the vehicle passed them. *See* 393 F.3d 471, 474-75 (4th Cir. 2005). Although the officers were not in the vehicle's direct path, the Court held the initial use of force was justified because the officers "had probable cause to believe that [the suspect's] oncoming vehicle posed an immediate threat of serious physical harm." *Id.* at 474, 478; *see also Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (finding the use of deadly force was reasonable where a minivan driver ignored police commands, and "attempted to accelerate within close quarters of two officers on foot."). But, the shots fired after the vehicle passed the officers—and temporarily stopped behind another vehicle—were impermissible since the threat to their safety was eliminated. *See Waterman*, 393 F.3d at 475, 482.

Here, Kimbrough ignored multiple police directives to stop, and entered a stolen vehicle to facilitate his escape. (*See, e.g.,* Belcher SMF

10

¶¶ 4, 12-13, 16-19.)  In the less than five seconds from the time Kimbrough started driving until the shooting stopped, Sgt. Bury and Officer Mason were faced with a suspect fleeing from a burglary, and in the course thereof, accelerating directly towards Officer Grecco.  (*See id.* ¶¶ 3, 18-19, 40.)  Because they perceived the vehicle to be a weapon capable of inflicting serious physical injury to Officer Grecco, Sgt. Bury and Officer Mason fired their weapons and ceased doing so when Officer Grecco was no longer in harms way.  (*Id.* ¶¶ 19-21, 24-27.)  On the basis of these facts—judged from the perspective of the officers at the scene—the court concludes that Sgt. Bury and Officer Mason had the requisite probable cause to believe Kimbrough's vehicle posed a grave threat to Officer Grecco's safety.  See *Graham*, 490 U.S. at 396; *Nimely*, 414 F.3d at 390; *see also Scott v. Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003) (stating "an automobile may be used as a deadly weapon."); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (same).  It follows that the use of deadly force by Sgt. Bury and Officer Mason in response to that threat was "objectively reasonable."  See *Graham*, 490 U.S. at 396.

Moreover, while the court is mindful of the fact-specific nature of the reasonableness inquiry, the record here supports the grant of summary

judgment.  *See Amnesty Am.*, 361 F.3d at 123.  With the exception of merely denying defendants' factual assertions, Kimbrough failed, throughout both his criminal trial—where he was represented by counsel—and these proceedings, to raise a single material inconsistency in the officers' accounts of the events in question.[7]  (*See* Dkt. No. 140, Attach. 2; Dkt. No. 143.)  Indeed, Kimbrough admits that: Officer Grecco was directly in the path of the vehicle; a vehicle could be considered a deadly weapon; and he "made no attempt to stop."[8]  (*See* Belcher SMF ¶ 26; Dkt. No. 140, Attach. 2 at 8; Dkt. No. 143 ¶ 1.)

In addition, Kimbrough's reliance on the fact that four of Sgt. Bury's rounds were fired when "the vehicle [was] beyond the point in which [Officer] Grecco's life would have been in danger" is misplaced.  (Dkt. No. 140, Attach. 4 at 7.)  Unlike in *Waterman*, 393 F.3d at 474-75, where the officers continued firing after the vehicle passed them and temporarily

---

[7] Notably, the transcript of Kimbrough's criminal trial unequivocally supports defendants' accounts of the events surrounding the use of force. (*See* Dkt. No. 132, Attach. 6-8.)

[8] To the extent Kimbrough suggests that Officer Grecco had a duty to retreat when faced with deadly physical force, this assertion is incompatible with New York law on the use of force in self-defense.  *See* N.Y. Penal Law §§ 35.15(2)(a)(ii), 35.30(1)(c) (McKinney 2009).

stopped behind another vehicle, Kimbrough's vehicle never stopped and Sgt. Bury stopped firing once Officer Grecco was safe. (*See* Belcher SMF ¶ 21.) Furthermore, Officer Grecco was directly in the path of Kimbrough's vehicle, whereas the officers in *Waterman* were not. (*See id.* ¶ 26; Dkt. No. 143 ¶ 1); 393 F.3d at 474. Given the "split-second nature of the decision," Sgt. Bury's additional shots—which only through hindsight were determined to be unnecessary—neither detracts from the reasonableness of the force used nor precludes the grant of summary judgment. (*See* Belcher SMF ¶ 40); *Waterman*, 393 F.3d at 478; *see also Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

In sum, after evaluating the totality of circumstances, the court concludes Sgt. Bury and Officer Mason had "probable cause to believe that [Kimbrough] pose[d] a significant threat of death or serious physical injury to" a fellow officer, *Nimely*, 414 F.3d at 390, and that "no reasonable factfinder could conclude" otherwise, *Amnesty Am.*, 361 F.3d at 123. As

such, defendants use of deadly force was "objectively reasonable," and their motions are granted with respect to Kimbrough's excessive force claim.

## B. Failure to Protect and *Monell*

Because the use of force in this case was constitutionally permissible, Kimbrough's remaining causes of action for failure to protect and municipal liability fail as a matter of law. *See, e.g., Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988). Without an underlying deprivation "of a right 'secured by the Constitution and laws,'" Kimbrough's case under 42 U.S.C. § 1983 is unsustainable. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Accordingly, all of Kimbrough's remaining claims, against all defendants, are dismissed.[9]

## C. Qualified Immunity

Alternatively, defendants assert that even if the force used was unreasonable, they are nonetheless entitled to qualified immunity. (*See* Dkt. No. 118 at 5-7; Dkt. No. 132, Attach. 18 at 10-12.) The court agrees

---

[9] In light of the court's dismissal of Kimbrough's claims, Belcher's cross-claim against Dewitt defendants is dismissed as moot.

and concludes "it was objectively reasonable for [defendants] to believe [their] conduct did not violate" Kimbrough's Fourth Amendment rights. *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007); *see also Wagner v. Swarts*, No. 1:09-cv-652, 2011 WL 5599571, at *11-12 (N.D.N.Y. Nov. 17, 2011) (discussing the qualified immunity standard). As such, qualified immunity provides an alternative basis for summary judgment.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Dewitt defendants' motion for summary judgment (Dkt. No. 114) is **GRANTED** and all claims against them are **DISMISSED**; and it is further

**ORDERED** that Belcher's motion for summary judgment (Dkt. No. 132) is **GRANTED** and all claims against him are **DISMISSED**; and it is further

**ORDERED** that Belcher's cross-claim is **DISMISSED** as moot; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties by mail and certified mail.

15

**IT IS SO ORDERED.**

February 10, 2012
Albany, New York